Good morning, Your Honors. May it please the Court, Grant Eddy for Heidy Castellanos, Appellant. Your Honor, this is a situation, I believe, where the combination of factors really mandates a remand for a retrial. First of all, we didn't get the ruling, formal ruling at least, on the request to suppress her confession, basically. And although I didn't bring that up before the Court, I believe that's still a clear and plain error not to have done that. I'm unclear on that. The district judge indicates that he is going to deny your motion. There's a reference to, perhaps, the district judge says, I will look at the DVD. Then there's nothing further, and then the trial commences, and off you go, and you were trial counsel? There's nothing further from you on that. So as the record stands, I read it as the district court judge denied the motion to suppress. That was his tentative ruling, and I think the record, however, is not absolutely clear of that. It's not clear that once the trial begins, presumably, shouldn't you take it as if he has denied your motion to suppress? I believe that's correct. Okay. Then with respect to this DVD reference, are you contending that the district judge had some obligation to do what appears to be sort of an offhand comment that I may take a look at that, and I may revisit my conclusion once I look at the DVD? Is that a basis for error? Well, I submit that he indicated he would review it, and that really is a possible basis, but in connection with all the other factors, maybe not alone. I mean, we've held when the district court makes a tentative ruling in that sort of context and invites the, implicitly or expressly, invites the defendant to renew the objection, which I think is what the district court did here, then don't you need to renew the objection at trial? So are we reviewing this suppression for plain error? Yes. I think so. Okay. But I believe there were other errors that were made, and that includes, for example, allowing a so-called expert, an investigator of the prosecution, to testify about no blind courier evidence. He indicated it doesn't exist, and that's really not appropriate for an expert testimony. There's no factual basis. There's no proper basis for that, and that was the ultimate decision that the jury had to decide. He doesn't quite say that. He says possibly it could, presumably not in his experience, but on cross-examination, as I understand it, he says hypothetically could happen that you had an unknowing courier. Yes. He said at that point, isn't it just your ability to argue on whether or not the jury should credit the particular expert testimony or not? Yes. His response on cross-examination was something to the effect that hypothetically, technically, logically it could, but his statement that's mentioned on page 31 of the government brief, quote, it doesn't exist, unquote, still was his fundamental take on it. As a practical matter in the real world, it doesn't exist, and that's not appropriate for an expert to say that. That's the ultimate decision. But isn't it then your role to cross-examine with vigor that particular expert and demonstrate that there's perhaps that there you have some evidence that shows it does exist and have that expert respond to that and perhaps then lose some credibility with the jury on that statement? I don't understand where that's an error for the expert to provide that testimony. Indeed, there's circuit law that seems to say that you can go that direction, the Sepulveda-Barraza case and others. Yes. However, the absolute statement that it doesn't exist still was in front of the jury. And although I did cross-examine on it, I don't believe that initial error was a remedy. And additionally, the court allowed the value to be brought in here, and I have submitted that wasn't proper either because it really gave the jury the information that would be quite prejudicial against the client, really not very helpful and not really the issue. I believe this was an issue relating to whether or not the client knew this item was within the vehicle and value was really irrelevant. And it's prejudice outweighed the value. Doesn't that go? I understood that was being submitted to suggest to the jury that the owners of the drugs wouldn't put in hugely valuable merchandise into the trunk of someone who didn't even know it was theirs so that they wanted to raise the inference that the person was not an unknowing courier. So it was relevant to that point, I think, in Sepulveda-Barraza's as much as well. In this case, we had two individuals who were witnesses against my client who actually did admit that they knew the item was within the vehicle. So there was no question that nobody was in the vehicle that knew what was going on here. So that wouldn't really apply. The presumed smugglers did have individuals that knew that was in the vehicle, and that were the two witnesses against my client. So that would not be appropriate or necessary to show that the criminals who were smuggling it in here would not have people within the vehicle that didn't know anything about what's happening. The real question is whether or not Heidi Castellanos knew this was within the vehicle, and that goes to the other issue that I requested, which was the mere presence instruction. The whole case was about, was she just present in the vehicle? And I needed that instruction. The court did give an instruction related to it, but it was related to conspiracy and not the issue of importation. Importation was really the gravamen of the entire case. But the court did give a knowing instruction with respect to the importation. It applied to that count as well, right? Yes. So the concept that you wanted to introduce, that you couldn't get a conviction in the circumstance where the individual had no knowledge of what was in the car, that was covered in the instructions that the district court provided. Yes, the knowledge would be. However, the mere presence wasn't emphasized, and that was what I needed with the mere presence instruction. And that related to the importation aspect of it. I did not get mere presence related to importation. And the whole question was whether or not her mere presence in that vehicle was something that could be attributing guilt to my client. I believe what all things considered. I'm still unclear. What's the difference between an instruction that says, in order to convict this person, you have to show they knew what was in the vehicle? And your instruction, your proposed instruction is, you can't be convicted if you're merely present. What is the substantive difference? What is mere presence providing that the knowing instruction does not provide? Well, the mere presence emphasizes what I was trying to get through to the jury. Why are you entitled to an emphasis by the district court? You're entitled to have your theory of defense covered, indeed. But why should the district court judge emphasize the theory of the defense? Is there any basis for saying that you're entitled to that? Well, I think that the basis is that that was our primary theory of the defense. And we had a right to have that in front of the court, in front of the jury. And it wasn't giving the defense an unfair emphasis. I believe it was simply indicating the reality that she was present in the car. And with that, I think that I was entitled to that instruction. But if the court isn't willing to remand, which I think the court should, at least there should be a resentencing. Because when the judge indicated that there was an obstruction of justice, that was simply reiterating, basically, what the jury found. The jury found her guilty, and therefore the judge found that she was lying. But really, the standard is whether or not a reasonable jury could have found her not guilty. And I believe after reviewing all the facts in the case, you can conclude that a reasonable jury could have concluded. What evidence do you point to as supporting that? Well, first of all, yes. Her statements, first of all, of what she did were consistent at the time of trial. Secondly, they were actually corroborated significantly by one of the witnesses, Daisy Garcia, who basically contradicted the testimony of Vargas, the other female witness against her. Vargas says that my client was driving all the way, and it was her idea. And Daisy Garcia says, no, it was Vargas, the other accuser, who actually had the whole idea to start with, who got the car, who drove the car and picked up Heidi Castellanos, drove down all the way. And then it's only in Mexico that Daisy Garcia and Vargas are there alone, basically, and Heidi is there basically without talking on her cell phone. Vargas says Heidi is talking on her cell phone, presumably to the bad guys that are loading it up. And Daisy Garcia says, no, it was Vargas who was calling on the cell phone. Let me ask you this. Even if there were sufficient evidence so that a jury could find that she was not guilty, why would that prevent the district court from making a finding that she had perjured herself? What case are you pointing at that says if any reasonable jury could find her not guilty, then the district court can't make a finding that she perjured herself? Well, I believe I did cite it in the brief, indicating on page 52 a jury's verdict alone is insufficient to support the imposition of an enhancement under this section, citing Monzon v. Valenzuela. So that doesn't quite get you there because the district court made its own determination, right? I think, yes, the district court did. And on the other hand, it seems to have been based upon the jury's finding, and the district court did not make specific findings about specifically where the client obstructed justice or committed perjury in any specific testimony. So I believe the record does not indicate that there's sufficient basis for the enhancement. With that, I submit. Thank you. Good morning. May it please the Court, Chris Rousander for the United States. Ms. Castellanos raises four issues on appeal. The first concerns whether the district court plainly erred by permitting the United States to cross-examine Ms. Castellanos regarding her post-arrest statements. And in this particular instance, the district court did not plainly err. Here this morning, it has been conceded that plain error is the standard of review here. As the district court noted preliminarily, based on the written record, it would seem to me that there is not a violation of Miranda and that there is nothing involuntary about the statements attributed to Ms. Castellanos. And that's at Excerpt of Record No. 55. So the district court clearly addressed the issues that had been raised by Ms. Castellanos in the motion to suppress. And then the United States made no use of those statements in its opening argument, made no use of those statements in its case in chief. Rather, it was during the defendant's case in which she began to voluntarily address her post-arrest statements. At that point, the United States did mention in very narrow terms in cross-examination her post-arrest statement. And specifically, what was referenced was her reason for her travel to Mexico. That was the narrow focus of what had been raised. The issues that had been raised relative to her post-arrest statement in the district court, those concerned, for example, references to her children. The references to her children didn't occur until significantly later in the transcript. The defendant waived her Miranda rights at about page 14 of the transcript, and she didn't even mention her children until about page 24 of the transcript. Where she mentioned the story that she provided regarding her reasons for travel to Mexico was actually at about page 14, 15, and 16 of the transcript. So there were no other questions regarding her post-arrest statement during her cross-examination. The only other reference to her statement was during the rebuttal case in which the United States specifically addressed the issue that was raised for the first time about threats, whether there had been any threats made to her children. And Agent Kiesel was asked whether there was any evidence of any threats at any point during the statements, and Agent Kiesel said no. So for our purposes, first, Agent Kiesel complied with Miranda. He advised her of every right, had her tick off initial after each right, after being advised of that right, and she acknowledged that right. And then secondarily, what the United States utilized her statements for was for impeachment relative to her statements during the course of the trial. The next issue that was raised was regarding modus operandi, and here the question is whether the district court abused discretion in admitting this expert testimony. Here the agent was asked, are you familiar with the term unknowing courier? The agent responded, I have heard of it. It doesn't exist. It is contrary to my training and experience, and also talking to other law enforcement officers. This type of testimony is consistent with what has been affirmed on multiple times, whether it was the United States versus Moreo, where, quote, drug traffickers do not entrust large quantities to people who are unaware, close quote, or United States versus Cordoba, quote, drug traffickers do not use unknowing transporters, close quote, and Castro, quote, drug traffickers never entrust to an unknowing dude, close quote, and also most recently with Sepulveda Barraza. The court about two months ago also affirmed a similar case out of the Southern District of California, United States versus Flores, end quote. The evidence was probative in light of Flores' theory that he was an unknowing courier and it was not significantly more prejudicial than the testimony in similar cases where we upheld. Were those cases cases in which there were co-defendants, as we have in this instance, where, as I understand it, the two other co-defendants admitted that they were aware. So does that change the calculus at all that in this instance, therefore, the testimony is somewhat different because there are knowing couriers? The question is, was this third person a knowing courier? Does that change the analysis at all? Well, I think it actually makes it even a stronger case for the United States because in those other cases, for the most part, they were conspiracy cases in one way or another. In this case, we actually had the two co-conspirators actually testify at trial. So I think that actually makes the case even stronger, that it is a somewhat more than routine case because they actually had conspiracy charged and two co-conspirators testify at trial. But, I mean, the expert testimony that says there is effectively no such thing as an unknowing courier because the value of these drugs, the traffickers would never provide that to someone who doesn't know, that isn't your situation because that's not what's happening. Two of the people in the car say, we know. So in that instance, isn't it a little different than when you can see the obvious relevance to the expert testimony in a circumstance where nobody in the car says we had any idea that there was anything there? Right. And I think to that point, factually, it would be distinct from the other cases that we've cited where in those instances there was a conspiracy that existed, but not necessarily that singular person with two other people in the car. I think that is a factual distinction from the other cases cited. But I think from a standpoint of the relevance and its probative value, it remains the same. If anything, again, I think it's even stronger, the probative value, because, you know, again, these are two other people that are in the car and whether a narcotics trafficker would in fact organization utilize someone in that vehicle, I think becomes more readily apparent. And on cross-examination, the defense did ask questions relative to other people being in the car and whether it was possible that drug traffickers could utilize a situation in which other people were in the car and somebody else may not know. And at excerpts of record 340 and 343 on cross-examination, when Agent Lee was presented with these hypotheticals, he did say that it could happen, that an individual could be unknowing. It could happen and that it was possible. The next issue that's raised is regarding the mere presence instruction. I think as Judge Seaborg pointed out, the district court did instruct on the elements of the offense. Specifically within the model instruction 6.10, it states that a mere presence instruction is unnecessary if the government's case is not solely based on the defendant's presence and the jury has been instructed on the elements of the crime. Here, the district court did instruct on the elements of the crime. Specifically, the district court instructed, quote, the defendant that the government must prove beyond reasonable doubt that the defendant joined the agreement knowing of its purpose. And on the importation counts, end quote, the defendant knowingly brought marijuana, close quote. And that's excerpts of record 41 and 43. So the court specifically instructed on the elements of the offense and that knowledge was required, not just the mere presence. Moreover, the district court further stated that a person does not become a co-conspirator by merely associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists. And that's the excerpt of record number 42. Further, the district court instructed that it is not enough that a defendant merely associated with the person committing the crime or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. And that's an excerpt of record number 46. So here we have not only the district court instructing on the elements, but moreover we have evidence that she was an active participant in the offense conduct. She was someone, based on the co-conspirators' testimony, that actually recruited them to be involved in this offense conduct. Prior to the vehicle being utilized in the offense conduct, it was registered and it was smogged in a name that was consistent with one of the co-conspirators. Then Ms. Castellanos was the driver of this vehicle coming back into the United States. Also, when she got to the primary inspection area, she provided a statement about what activities they had been engaged in in Mexico, which, again, is trying to further their entry into the United States. So there's more than enough here to show that she was beyond just merely being present, that she was an active participant in the offense conduct. And the district court did not abuse its discretion in refusing to give the defense's requested mere presence instruction. Finally, regarding the obstruction of justice, as pointed out by Judge Acuda, upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the sentencing guidelines. And that's from the United States v. Dunnegan of the United States Supreme Court from 1993. Once the district court made a determination that Castellanos had provided willful false testimony at trial on material issues, that was it. What was the material issue that the district court judge found that she made false statements? Well, there were a variety of things. First, according to Officer Martinez, who testified at trial, Castellanos told him that she was bringing nothing into the United States from Mexico and that the passengers were returning from partying in Rosarito. They were on their way to Huntington and that she got a tattoo in Mexico. And this tattoo situation was something that the officer remembered because she was trying to show her tattoo and show her shoulder to try and distract him from his duties of actually performing the inspection. Castellanos testified that it never happened, that all of those statements didn't happen. That was inconsistent. Also Vargas and Garcia supported Officer Martinez's version of the events that occurred at the primary inspection area. Castellanos also acknowledged on the stand that, quote-unquote, yes, I lied when talking about the statements that she made to Agent Kiesel. And that was regarding her reasons for travel to Mexico. Again, just showing a pattern of lying throughout the entire process. She lies in primary inspection. Is that what the district court relied on? Well, the district court relied on all of this. So the district court said that, specifically, Castellanos did testify that she did not have knowledge. That is obviously an element of the crime, a key issue. The jury, I believe, arrived at the right and just verdict, discarded the testimony, ultimately convicted on both counts. So I would find that the testimony on that key fact was willfully and materially false. Suppose she hadn't testified. Do you think an enhancement for two points for perjury would have been warranted? Well, I certainly think we would have a valid argument for doing so. Aside from her testimony, the district court went on to say there was also other testimony, as Mr. Alexander points out, relating to other reasons why Ms. Castellanos claimed she was going to Mexico. And that testimony, I would conclude here, again, was willfully and materially false, designed to arrive at an acquittal or a not guilty verdict by the jury. And those issues that I pointed out during the sentencing hearing focused on the fact that she had provided these statements at primary inspection, again, trying to distract the officer from his duties, and also that in her post-arrest statement, she had in fact admitted during the course of the trial that she had lied. And these types of things are designed to try and prevent the officers from arriving at their duties. And those things include being able to perform follow-up investigation. For example, Agent Kiesel, because of these statements, has to try and investigate the story that she's providing that's actually false. So that, again, are things that are designed to distract from the agent's investigation. So our position would be that, yes, had she not testified, an obstruction of justice enhancement would still be applicable, but she did. And she did, and she provided willfully false testimony, as found by the district court. And with that, I would submit, unless there are any further questions. Thank you. Real briefly, Your Honor. It's interesting that a counsel for the government indicates that an obstruction of justice would be applicable even if she hadn't testified, apparently because she lied initially. So did the other two. They all lied, and then later on changed their stories. Concerning what the client testified to at the time of trial, the two points that the judge mentioned basing this obstruction were, first of all, whether she had knowledge of the marijuana inside the vehicle, and secondly, why she went to Mexico. Those are two aspects of the ultimate question of fact, which the jury found. Is she guilty of the importation of the marijuana? If she didn't know that it was in there, and if she went to Mexico just to have some recreation or something, then she would be not guilty. The judge found her obstructing justice because the jury found the ultimate fact that she imported that marijuana. Okay. Thank you, counsel. Thank you. We appreciate the party's arguments, and the matter will be submitted at this time.
judges: Seeborg, Paez, Ikuta